UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY DENMARK,

    Plaintiff,

v.                                                     Case No. 8:20-cv-2852-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for SSI (Tr. 219-24). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 139-42, 146-52). Plaintiff then requested an administrative hearing (Tr. 153). At Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 35-79). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-34). Subsequently, Plaintiff requested review

from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

    **B.**    **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1965, claimed disability beginning August 11, 2014 (Tr. 219). Plaintiff obtained a high school education (Tr. 240). Plaintiff did not have any past relevant work experience (Tr. 68-69, 240). Plaintiff alleged disability due to bi-polar disorder and schizophrenia (Tr. 239).

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 4, 2018, the application date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: scoliosis, obesity peripheral neuropathy, systemic lupus erythematosus, schizoaffective disorder, depressive type, and personality disorder (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except that Plaintiff could never climb ladders, ropes, and scaffolds; was limited to only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; was limited to occasionally reach overhead bilaterally and could frequently reach in all other directions; was limited to occasionally be exposed to

extreme temperatures, humidity, and atmospheric irritants such as dusts, odors, fumes, and gases; was limited to occasionally be exposed to workplace hazards such as unprotected heights and moving machinery; and was limited to unskilled work (Tr. 21). The ALJ also found that Plaintiff was able to perform simple, routine, and repetitive tasks and make simple, work-related decisions; was able to understand, remember, carry out, and maintain persistence for work duties that were detailed when work tasks were combined, provided they were made up of simple tasks requiring only common sense understanding; was able to occasionally interact with coworkers, supervisors, and the general public; and was able to adapt to occasional changes in the general nature of the work setting or to the tasks to be performed (Tr. 21). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21-22).

      Considering the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff did not have any past relevant work (Tr. 27). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a housekeeping cleaner, cafeteria attendant, and shipping/receiving weigher (Tr. 28). Accordingly,

based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 29).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. § 416.920(a)(4). If the claimant cannot perform the tasks required of his

or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner

5

are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by relying on erroneous VE testimony regarding her postural limitations or ability to interact with others and that the ALJ failed to resolve an apparent conflict between the *Dictionary of Occupational Titles* ("DOT")[1] and the VE's testimony. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**A.     VE Testimony**

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the

---

[1] "The DOT is an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018).

claimant can perform. *Washington*, 906 F.3d at 1359 (citation omitted); *see* 20 C.F.R. § 416.920(a)(4)(v). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted).

In doing so, the ALJ may "take administrative notice of reliable job information available from various governmental and other publications[,]" including the DOT, published by the Department of Labor. 20 C.F.R. § 416.966(d); d); 20 C.F.R. § 416.912(b)(3). An ALJ may also utilize the services of a VE or other specialist in making the determination at step five as to whether a claimant's work skills can be used in other work and as to the specific occupations in which such skills can be used. 20 C.F.R. § 416.966(e). Indeed, a VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

In the instant case, the ALJ presented the following hypothetical to the VE at the hearing:

> So, high school education, no past work, and further, please assume that this individual can perform work at the light exertional level. Postural activity is limited to occasional, but never climbing ladders, ropes and scaffolds. Handling and fingering bilaterally limited to frequent. Reaching overhead bilaterally limited to occasional, but other directions of reach, frequent.  Work must be performed indoors to avoid exposure, exposure to direct sunlight. The work must be unskilled work, simple, routine, repetitive tasks, simple work-related decision-making. And -- one second here -- with respect to the simple tasks and decision-making, this person can understand, remember, carry out and maintain persistence for work duties that are detailed when the work tasks are combined, provided they are made up of simple tasks that require only common sense understanding. Is that vocationally specific enough? . . . Not more than occasional

>interaction with coworkers, supervisors, and the general public, and not more than occasional changes in the general nature of the work setting and the, or the tasks to be performed. Is there other work available in the national economy for this hypothetical individual?

(Tr. 73-74). The VE responded in the affirmative and testified that given the ALJ's factors, Plaintiff could perform the requirements of representative occupations such as housekeeping cleaner, cafeteria attendant, and shipping/receiving weigher (Tr. 74). In her decision, the ALJ concluded that Plaintiff had the RFC to perform light work except that she could "occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl" (Tr. 21). Later in the decision, the ALJ again noted that Plaintiff "can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl" (Tr. 26). Additionally, the ALJ found that Plaintiff was "able to have occasional interaction with coworkers, supervisors, and the general public" and was "able to adapt to occasional changes in the general nature of the work setting, or to the tasks to be performed" (Tr. 26).

Plaintiff argues that the VE's testimony does not constitute substantial evidence because the ALJ's RFC and hypotheticals to the VE were vague and therefore, the ALJ could not rely on the VE's testimony regarding occupations Plaintiff could perform based on those limitations. Specifically, Plaintiff argues that although according to the Selected Characteristics of Occupations, the job of a housekeeper involves occasional stooping, kneeling, and crouching, these postural activities may all occur on an occasional basis throughout the workday. According to Plaintiff, a housekeeper may have to perform tasks that require him or her to stoop up to one-third of the workday and also perform tasks that require him or her

to crouch up to one-third of the workday. In other words, the housekeeper may have to perform a combination of these tasks frequently throughout the day but never more than occasionally individually. Plaintiff contends that it is not clear whether the ALJ intended to find that Plaintiff could perform the combined postural activities occasionally or that Plaintiff could perform each postural activity occasionally regardless of the cumulative effect. Additionally, Plaintiff argues that the ALJ's decision regarding Plaintiff's RFC to have occasional interaction with coworkers, supervisors, and the general public was vague because the word "interaction" could mean to work in tandem or to have superficial interactions. Plaintiff argues that the case should be remanded for clarification of the quality of interactions the ALJ noted in the RFC.

The Court finds no error. Neither the VE nor Plaintiff's counsel expressed any concerns regarding the ALJ's hypothetical as it related to the housekeeping cleaner job or the cafeteria attendant job (Tr. 74-79). *See Teague v. Comm'r of Soc. Sec.*, 743 F. App'x 410, 412 (11th Cir. 2018) (per curiam) (finding that substantial evidence supported the ALJ's step-five finding where the plaintiff failed to challenge the hypothetical question posed to the VE, failed to challenge the VE's testimony that the plaintiff could perform the identified jobs, offered no evidence to the contrary during the administrative hearing, and raised no objection to the VE's qualifications, and the ALJ relied upon the VE's unrebutted testimony based on the VE's experience, practice, having completed onsite job analyses for the specific jobs identified, and the DOT). Additionally, the VE did not express any confusion or

lack of understanding regarding the postural limitations or the word "interaction." Without support in the record, Plaintiff manufacturers what the ALJ "may have intended" when including postural limitations in the hypotheticals posed to the vocational expert. The meaning of the limitations was clear to the ALJ, the vocational expert, and Plaintiff's counsel at the hearing. Additionally, the DOT job description for Housekeeper is consistent with Plaintiff's RFC limitation in that it states the following:

> Stooping: Occasionally - Exists up to 1/3 of the time
> Kneeling: Occasionally - Exists up to 1/3 of the time
> Crouching: Occasionally - Exists up to 1/3 of the time

DICOT 323.687-014 (G.P.O.), 1991 WL 672783.

Moreover, the VE's testimony regarding the cafeteria attendant job is consistent with the Plaintiff's RFC limitations. DOT job description for Cafeteria Attendant is as follows:

> Carries trays from food counters to tables for cafeteria patrons. Carries dirty dishes to kitchen. Wipes tables and seats with dampened cloth. Sets tables with clean linens, sugar bowls, and condiments. May wrap clean silver in napkins. May circulate among diners and serve coffee and be designated Coffee Server, Cafeteria Or Restaurant (hotel & rest.).

DICOT 311.677-010 (G.P.O.), 1991 WL 672694. The description also specifies that the job involves occasionally talking and is designated as "not significant" with respect to people. *Id.* at 2-3. Plaintiff characterizes this as "tasks [that] obviously involve frequent interaction with the public" which appear to be superficial. This is conjecture and unsupported by the DOT's job description or the ALJ's findings.

Based on the foregoing, the Court finds that the ALJ's hypotheticals were not vague and the ALJ properly submitted Plaintiff's RFC to the VE. Accordingly, the ALJ relied on the VE's testimony in response to the hypotheticals with the supported limitations that Plaintiff could perform other work that existed in significant numbers in the national economy.

### B. Apparent Conflict Between VE Testimony and DOT

Plaintiff also asserts that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the DOT. Namely, Plaintiff argues that an apparent conflict exists between Plaintiff's RFC limitations of "simple, routine tasks" and the shipping and receiving weigher job which the VE testified that Plaintiff could still perform because the shipping and receiving weigher job requires a reasoning level of three according to DOT's job description. *See* DICOT 222.387-074 (G.P.O.), 1991 WL 672108. The Commissioner argues that the Court need not reach this issue because the other two jobs listed constitute a significant number of jobs and support the ALJ's step-five finding. Moreover, the Commissioner argues that Plaintiff's argument should be waived because she does not explain how or why the RFC limitation is inconsistent with a reasoning level of 3 and that there is no apparent conflict between a reasoning level of 3 and the RFC limitation at issue here.

Over the years, issues have arisen regarding the ALJ's duty to investigate and develop an adequate factual record to support a disability determination in cases where VE testimony is contradicted by the DOT, upon which the SSA frequently

11

relies. *See generally, Washington*, 906 F.3d at 1355-61. With the issuance of Social Security Ruling ("SSR") 00-4p, the SSA offered its policy interpretation regarding the issue. *See id.* at 1356. Under SSR 00-4p, when an apparent unresolved conflict exists between VE evidence and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about whether the claimant is disabled." 2000 WL 1898704, at * 2 (Dec. 4, 2000). The ALJ must inquire, on the record, whether a conflict exists. *Id.* If a conflict exists, the ALJ must resolve the conflict by determining whether the explanation provided by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the information contained in the DOT. *Id.* Reasonable explanations may include the availability of information about a particular job's requirements or about occupations not listed in the DOT but available in other reliable publications, information obtained directly from employers, or from a VE's experience in job placement or career counseling. *Id.*

In considering the application of SSR 00-4p, the Eleventh Circuit concluded that ALJs maintain "an affirmative duty to identify apparent conflicts between the testimony of a [VE] and the DOT and resolve them." *Washington*, 906 F.3d at 1356. In carrying out that duty, the ALJ must do more than simply ask the VE whether his or her testimony is consistent with the DOT. *Id.* According to the Eleventh Circuit, when a conflict has been identified, SSR 00-4p requires the ALJ to provide a reasonable explanation for the discrepancy and to detail in the decision how the ALJ resolved the conflict. *Id.* The failure to do so means that the ALJ's decision, if

based upon the contradicted VE testimony, is not supported by substantial evidence. *Id.*

SSR 00-4p thus imposes a duty on the ALJ to identify and resolve "apparent conflicts" between DOT data and VE testimony. *Id.* at 1362. Under this framework, an "apparent conflict" is one "that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.*

Here, the ALJ posed a hypothetical to the VE that included the limitation that "the work must be unskilled work, simple, routine, repetitive tasks" and that Plaintiff "can understand, remember, carry out and maintain persistence for work duties that are detailed when the work tasks are combined, provided they are made up of simple tasks that require only common sense understanding" (Tr. 73). Based on this hypothetical, the VE testified that a person with these limitations was capable of performing the job of a shipping receiving weigher (Tr. 74). The VE also found no conflict between the occupational evidence presented and the DOT or the Selected Characteristics of Occupations ("SCO") (Tr. 74-75). The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (Tr. 28).

The DOT provides that the position of shipping and receiving weigher, DOT 222.387-074, requires a reasoning level of three, which means being able to "[a]pply

13

commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or form standardized situations." DICOT 222.387-074 (G.P.O.), 1991 WL 672108.

Recently, the Eleventh Circuit addressed whether a limitation to simple tasks is an apparent conflict with a reasoning level 3 job requirement. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316 (11th Cir. 2021). The Eleventh Circuit held that there is an apparent conflict between an RFC limitation of simple, routine, and repetitive tasks and jobs that require level three reasoning. *Id.* After considering a split in Circuits on this issue, the Eleventh Circuit held:

> [T]here is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning, and in doing so join the decisions of the Fourth, Ninth, and Tenth Circuits. This does not mean that there is an actual conflict or that an ALJ is categorically prohibited from including a job with level 3 reasoning in the step five analysis for a claimant with such a limitation. It does mean that the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination. *See Washington*, 906 F.3d at 1366 ("This doesn't mean that the VE [or ALJ were] wrong, but it does mean that there was a conflict, it was apparent, and it was important.").

*Id.* at 1317.

In the instant case, the ALJ limited Plaintiff to understanding, remembering, carrying out, and maintaining persistence for work duties that are detailed when work tasks are combined, provided they are made up of simple tasks that request only common sense understanding (Tr. 21, 73-74). As noted above, the Commissioner argues that this additional modification regarding detailed combined tasks and common-sense understanding does not involve simply determining

14

whether a level 3 reasoning level requirement conflicts with simple, repetitive tasks. However, as the Commissioner notes, it is not necessary for this Court to determine whether there is an apparent conflict between the shipping and receiving weigher's level 3 reasoning requirement and the RFC limitations at issue here where the ALJ went further in defining the precise limits of Plaintiff's mental limitations, because the ALJ identified other jobs that Plaintiff is qualified to do considering her age, education, work experience and RFC. *See Valdez v. Commissioner of Social Sec.*, 808 F. App'x. 1005, 1009 (11th Cir. Apr. 23, 2020) (finding that any error pertaining to the ALJ's conclusion that plaintiff could work as an order clerk was harmless because there were other jobs he was qualified to do even in light of his RFC, age, education, and work experience).

Even if the ALJ failed to recognize an apparent conflict and further failed to provide a reasonable explanation for the determination that Plaintiff is capable of performing the job of a shipping/receiving weigher, the ALJ listed two other positions, housekeeping cleaner and cafeteria attendant, which Plaintiff could perform. The Court is aware that in *Viverette*, the Eleventh Circuit held that on the record before it, any error by the ALJ in failing to resolve an apparent conflict between the DOT and the VE's testimony was not harmless. 13 F. 4th at 1317. Specifically, the Eleventh Circuit observed that while "the VE testified that there are 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally," the ALJ failed to make findings as to how many jobs were available for

15

each position individually or whether the number of the remaining two jobs, either separately or collectively, constituted a significant number, absent the third and referenced the testimony collectively when concluding that work existed in significant numbers in the national economy which the plaintiff could perform. *Id.* at 1318. "*Given that* over eighty percent of the jobs presented to the ALJ [were] affected by the apparent conflict" and that the Eleventh Circuit was reviewing the ALJ's decision for substantial evidence, the Court noted that it was "hesitant to make any factual determinations [] about whether the final assembler or check weigher positions exist in significant numbers in the national economy." *Id.* (emphasis added). In light of the collective nature of the ALJ's findings, the Eleventh Circuit concluded that remand was necessary. *Id.* at 1318-19. Further, the Eleventh Circuit found that even if the ALJ had made specific findings about the number of jobs available in the national economy for each position and whether those numbers were significant, it would still remand the decision because of the issues surrounding the VE's testimony regarding the number of jobs available in the national economy and the specific jobs within the SOC code which the claimant could perform. *Id*. at 1319.[2]

---

[2] This Court is aware of other cases from this district that have been remanded pursuant to *Viverette*, however this Court does not find them persuasive in analyzing this record. *See*; *Cisneros v. Comm'r of Soc. Sec.*, No. 2:20-CV-873-JLB-MRM, 2022 WL 354717, at *3 (M.D. Fla. Feb. 7, 2022); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-CV-905-SPC-MRM, 2021 WL 6205948, at *16 (M.D. Fla. Dec. 16, 2021), *report and recommendation adopted*, No. 2:20-CV-905-SPC-MRM, 2022 WL 19698 (M.D. Fla. Jan. 3, 2022); *Rodriguez v. Kijakazi*, No. 8:20-CV-1232-WFJ-SPF, 2021 WL 6127795, at *4 (M.D. Fla. Nov. 2, 2021), *report and recommendation adopted,* No. 8:20-CV-1232-WFJ-SPF, 2021 WL 6126964 (M.D. Fla. Dec. 27, 2021).

The instant case is distinguishable from *Viverette* because the affected jobs at issue here constitute a small percentage of the jobs the ALJ found that Plaintiff could perform (Tr. 28). In *Viverette*, the Eleventh Circuit specifically stated that on the record before it, it was hesitant to make factual determination about whether the other jobs existed in significant numbers in the national economy. *Id.* at 1319. Here, in relying on the vocational expert's testimony, the ALJ found the job of housekeeping cleaner had about 445,000 jobs in the national economy and the job of cafeteria attendant had about 106,000 jobs in the national economy (Tr. 28). Plaintiff does not argue that there is an apparent conflict between the VE's testimony regarding the jobs of housekeeping cleaner or cafeteria attendant, the Plaintiff's RFC, and the DOT reasoning level for those jobs. Even without the shipping and receiving weigher positions, which the ALJ found there to be 72,000 jobs in the national economy, there are about 551,000 jobs in the national economy that Plaintiff could perform, which this Court finds is substantial evidence to support the ALJ's step five determination. Additionally, Plaintiff failed to object to the VE's testimony or question the ALJ's finding regarding the number of cafeteria attendant or housekeeping cleaning jobs during the administrative proceedings. Therefore, the ALJ's error was harmless because the ALJ found other jobs that Plaintiff could perform existed in significant numbers in the national economy and the ALJ's finding is supported by substantial evidence in the record. *See Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (holding that even if there had been an inconsistency between the vocational expert's testimony and the DOT, the ALJ's

17

error was harmless when the vocational expert identified other jobs existed in significant numbers in the national economy Plaintiff could perform); *see also Caldwell v. Barnhart*, 261 F. App'x. 188, 190 (11th Cir. 2008) ("When ... an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Notably, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant number' under the statute and regulations." *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931 (11th Cir. 2015) (finding 23,800 jobs in national economy constituted a "significant number") (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)). As the *Atha* court held, although the ALJ bears the burden to identify jobs in the national economy that a plaintiff can perform, "the ALJ need not identify a certain number of jobs for its decision to be supported by substantial evidence." *Id*.

Moreover, the Eleventh Circuit has previously found harmless error when the ALJ has identified other jobs that the plaintiff can perform and substantial evidence supports the ALJ's finding that they exist in significant numbers. *See Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 320 (11th Cir. 2021) (finding that even if the VE's testimony that plaintiff could perform work as a mail clerk was apparently inconsistent with his RFC, the inconsistency would have been harmless because the ALJ's finding that plaintiff was capable of performing jobs that existed in significant numbers in the national economy was supported by the substantial evidence);

*Valdez*, 808 F. App'x at 1009 ("[A]ny error pertaining to the ALJ's conclusion that he could work as an order clerk is harmless because there are other jobs he is qualified to do even in light of his residual functional capacity, age, education, and work experience."); *Wooten*, 787 F. App'x at 674 (finding that even if an apparent conflict existed, it would be harmless error because ALJ identified a different job plaintiff could perform and substantial evidence supported the ALJ's finding that the unaffected job existed in significant numbers in the national economy).

In light of *Viverette*, *Bacon*, *Valdez*, and *Wooten*, and this record, this Court finds that substantial evidence supports the ALJ's finding that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Remanding this case for the ALJ to simply state that other work independently and collectively exists in significant numbers would be a useless formality when substantial evidence already supports the ALJ's conclusion. *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) (noting that where "remand would be an idle and useless formality," a reviewing court should not "convert judicial review of agency action into a ping-pong game").

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 21st day of March, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

20